ISAAC H. BRONNER AND OTHERS, RESPONDENTS, v. SAMUEL
FRAUENTHAL, APPELLANT.

*Evidence, Conflict of—Declarations in absence of Defendant—Lost Note—Parol
Proof of Endorsement.*

In an action for goods sold and delivered, upon the question whether Plaintiffs trusted a third party, rather than the Defendant, for the bill of goods, there being a conflict of testimony on that point, it is competent for the Plaintiff to prove that he was informed at the time that said *third party* was untrustworthy, the witness giving him such information.

*E. F. Hall* for Appellant.

*A. J. Parker* for Respondents.

DAVIES, CH.J.—The Plaintiffs, composing the firm of Bronner
& Brothers, seek to recover in this action the amount of a bill of
goods, which they claim they sold to the Defendant. The Defendant, on the contrary, claims that the goods were sold to one
Samuel Lowenstein.

Seckel Bronner, one of the Plaintiffs, testified, without objection, that on the day the goods were sold to the Defendant he
refused to sell the goods to said Lowenstein, and that Nathaniel
C. Bishop had at that time told him not to trust said Lowenstein,
because he was not responsible.

The said Bishop was then called as a witness on behalf of the
Plaintiffs, and was asked this question : " State whether you knew,
when Lowenstein came there, anything concerning his responsibility ; and if so, whether you made any communication on that
subject to the Plaintiffs ? "

This was objected to by the counsel for the Defendant, on the
ground that the Defendant was not shown to be present at the
time.

The Court overruled the objection, and allowed the question to
be put, and the Defendant's counsel excepted.

This exception is now urged upon us, as a ground for reversal
of the judgment in the action.

It is to be observed that the ground of the objection assumes an answer which the question did not call for.

The witness was not asked what communication he did make to the Plaintiffs on the subject of the Defendant's responsibility.

If the question had been of this character, then the objection would have had point and relevancy.

The question embraced two propositions: 1. Whether the witness knew anything of the responsibility of Lowenstein, when the latter came to purchase the goods; and 2. If he did, whether he made any communication to the Plaintiffs on that subject.

As to the first branch of the question, it is not perceived, nor is it now urged, that any sound objection exists to it. Many purposes suggest themselves why the Plaintiffs might need to ascertain whether the witness had any knowledge on this subject.

The fact of such knowledge was legitimate, and if it had appeared from his answer that the witness had it, it would then have been competent to inquire of him how he became possessed of that knowledge, and if from Lowenstein himself, it cannot be doubted that it would be competent to show that the same had been communicated to the Plaintiffs; and it was wholly immaterial whether they derived it directly from Lowenstein himself, or mediately through the witness; and it was equally immaterial whether the Defendant was present or absent when such knowledge came to them. The issue made by the Defendant upon the trial was, that the goods were sold to Lowenstein, and not to himself. To this the Plaintiffs replied, that they did not sell to Lowenstein, and they refused to sell to him, as the witness Bishop had told them not to trust Lowenstein, because he was not responsible. This testimony greatly corroborated the statement of the Plaintiffs, that they did not sell to Lowenstein, as it is not to be credited that they would sell to an irresponsible man. As such testimony had been given without objection, there could not be any good objection to the second branch of the question, even if it had gone to the extent of inquiring as to the nature of the communication made by Bishop to the Plaintiffs on the

subject of Lowenstein's responsibility. The Defendant had no concern with that communication, and he had no ground to insist that the Plaintiffs could not ascertain the fact of Lowenstein's responsibility, except in his presence. But the question did not call for the communication, but only the fact, whether any communication on this subject was made by the witness. There could be no objection to such an inquiry; neither could the Defendant object that the Plaintiffs ascertained Lowenstein's irresponsibility when he was not present.

The claim of the Plaintiffs in suit was assigned by them for the benefit of their creditors, and they having made a settlement with their creditors, the same was reassigned to them.

While in the hands of their assignee, a brother of Samuel Lowenstein called upon a clerk of the assignee, and purchased said claim, and gave in payment four notes of $189.82 each, at two, four, six, and eight months.

The clerk stated at the time he had no authority to make the arrangement; and the assignee, on being informed of it, repudiated the transaction.

The clerk also testified that he never received the notes, never held the notes, and had never seen them. And the notes were returned by the person with whom they were deposited for the assignee.

One Fulda was the agent in procuring said purchase of said claim, and said notes were delivered to him for that purpose. He testified that all the notes were returned to him, and that he had them all before any of them became due.

Samuel Lowenstein was then called as a witness for the Defendant, and the following question was put to him in reference to one of the notes delivered to Fulda:

"By whom was the note you saw in Rochester endorsed?" The question was objected to by the Plaintiffs' counsel, on the ground that the loss of the note was not proved, and it was not shown to be in Plaintiffs' possession.

The objection was sustained, and the question excluded, and the Defendant's counsel excepted. The arrangement in regard

to the notes having been cancelled, and they returned to the possession of Fulda, the agent of Lowenstein, it was wholly immaterial by whom the note inquired of was endorsed.

It was not important that this evidence was not objected to on the ground of its immateriality. Evidence offered in support of immaterial issues may be rejected on the trial, although not objected to by either party (Corning v. Corning, 2 Seld. 97).

The exception taken to the admission of the deposition de bene esse of Fulda, a witness on the part of the Plaintiffs, is untenable, and was properly overruled.

It was proven that he (the witness) resided out of the State, and that inquiries had been made, at the time of the trial, at his usual places of stopping when in the State, and the result left a reasonable ground to infer that the witness was not at the time within the State.

This preliminary proof fully met the requirements of the cases (Donnell v. Walsh, 6 Bos. 621; Nixon v. Palmer, 10 Barb. 175).

These are the only exceptions taken by the Defendant, and upon which it is claimed that the judgment should be reversed. ·

It has been seen upon examination that they cannot be sustained.

The jury found a verdict for the Plaintiffs, and judgment thereon was affirmed at the General Term of the Superior Court of New York.

The judgment must be affirmed, with costs.

PARKER, J.—The only questions for examination upon this appeal arise upon rulings made at the trial in regard to the admission and rejection of evidence.

The action was for goods sold and delivered. The answer denied the sale to the Defendant, and alleged that the Plaintiffs sold the goods in question to one Samuel Lowenstein; and further set up as a defence, that the Plaintiffs made a general assignment of all their property, including the demand in question, to one Moses Bronner; and that the said assignee afterwards sold and as-

signed the said demand to one Joseph Lowenstein, to whom the said Samuel Lowenstein had paid the same.

After the Plaintiffs had given proof respecting the sale and delivery of the goods in question to the Defendant, his counsel, on cross-examination of Plaintiffs' witnesses, drew out proof which, unexplained, tended to show that the goods were sold, and the credit given to Samuel Lowenstein, and not to the Defendant, and that the Plaintiffs were willing to trust Lowenstein, believing him to be responsible ; and tending to contradict and discredit the testimony of the Plaintiff, Seckel Bronner, who had sworn that he refused to sell the goods to Lowenstein, and that Nathaniel Bishop had, at that time, told him not to trust Lowenstein, because he was not responsible. The said Bishop was then called by the Plaintiffs as a witness, and was asked to state whether he knew, when Lowenstein came there, anything concerning his responsibility, and if so, whether he made any communication on that subject to the Plaintiffs. To this question the Defendant's counsel objected, on the ground that the Defendant was not shown to be present at the time. The Court overruled the objection, and allowed the question to be put, and Defendant's counsel excepted.

The witness answered as follows : " I did think I knew his responsibility, and I told Mr. Bronner I would not trust him, unless he would give security. He was owing me a large amount at that time."

In deciding the question raised by the exception, we are confined to a consideration of the question, without reference to the answer given, because the answer is not responsive to the question. The answer called for by the question was a simple " yes " or "no." It was merely preliminary to another question, which might have called for what the witness told the Plaintiffs on the subject of Lowenstein's responsibility.

The Court could not know, when ruling upon the question, that anything more than "yes" or "no" to it was called for, and it must be deemed to have made the ruling with that view. The objection that the Defendant was not present at the time inquired

about, is not pertinent, and was properly overruled. But if the question had gone further, and called for the communication made to the Plaintiffs on the subject, I think it would have been admissible. As the evidence then stood upon the issue whether the goods were sold to Lowenstein or to the Defendant, there being a conflict on that subject, and upon the collateral and pertinent fact, whether the Plaintiffs were willing to trust Lowenstein, and even whether they knew him to be irresponsible, it was undoubtedly competent for the Plaintiffs to give further testimony on that subject.

The fact that the Plaintiffs knew Lowenstein to be untrustworthy, was one which it was proper the jury should know and consider in weighing the balanced testimony upon the question whether they did trust him. And so it was proper to show that they were informed of that fact by Bishop, or any other person who knew it; and the objection that the Defendant was not present when the communication of that fact was made to them, presented no reason for its exclusion (1 Greenl. Ev. §§ 101, 108). In both points of view, therefore, the objection was properly overruled.

The Defendant, upon the trial—after it had appeared that the Plaintiffs, in November, 1857, had made a general assignment to Moses Bronner, and that in March, 1858, after they had procured a settlement with their creditors, Moses Bronner had reassigned to them the assigned property, including the claim in question—produced a bill of sale of the demand in question to Joseph Lowenstein, purporting to have been made by Moses Bronner, assignee, on the 1st day of December, 1857, in consideration of four notes, payable at two, four, six, and eight months.

This bill of sale, it was shown, was not executed by Moses Bronner in person, nor with his knowledge or consent, and that he, upon its being made known to him, repudiated it, and delivered back the notes to the agent of Lowenstein, who had procured the paper to be executed. This agent testified that he endorsed the first note, and when he got it back, tore his name off, and that he supposed it was destroyed, though he did not know.

Samuel Lowenstein, as a witness, testified as to the notes, that after the assignment to Joseph Lowenstein he saw the first one in a banking-house in Rochester. The Defendant's counsel asked him, "By whom was the note you saw in Rochester endorsed?"

This question was objected to by the Plaintiffs' counsel, on the ground that the loss of the note was not proved, and it was not shown to be in Plaintiffs' possession.

The Court sustained the objection, and the Defendant excepted.

It is insisted by the counsel for the Defendant that the evidence was competent, as tending to show that the assignee did not return the notes, but kept them until due, and so ratified the sale of the claim in suit, and that the proof of the destination of the notes was sufficient to entitle Defendant to the evidence.

I do not think the Defendant made a case entitling him to the evidence. In the first place, as there was no offer to show, or suggestion, that the assignee was the endorser, it did not appear to be material to inquire by whom the note was endorsed; and though the objection was not on that ground, it was no error in the Court to exclude immaterial evidence upon its own motion, although no objection was raised by the opposite party (Cooper v. Barber, 24 Wend. 105). Again, there was no sufficient evidence of the loss or destruction of the note. Fulda, the agent to whom it was returned, had made no search for it, and did not know that it was destroyed. Nor was it shown that it was not still in the banking-house in Rochester. It was not competent, therefore, to give parol proof of the endorsement.

The only other point now insisted upon by the Defendant's counsel is, that there was no sufficient proof of the absence of the witness Fulda, at the time of the trial, to authorize the admission of his deposition, taken conditionally under the statute. It was proved that Fulda resided out of the State; that he was in the habit of visiting the city of New York, where the action was tried, two or three times a year, and remaining but a single day; that when he was in the city he made the place of business of the witness called to prove his absence, his headquarters, and that the witness had no knowledge or intimation of his then being in

town.    That his last place of business, when he lived in New York, was with a Mr. Waller, and that the witness had, on the morning of the trial, been to Waller's to ascertain whether he was there, and found that he was not.

And that Fulda, when applied to to attend the trial, had said his business would not admit of his absence a week or two attending on the trial.    There was no evidence tending to show that he was in the State, and clearly the evidence of his absence was primâ facie sufficient.

I can see no ground for reversing the judgment, and am of the opinion that it should be affirmed.

All concur.

Affirmed.